Slip Op. 10-94

## UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————     :
CITIZEN WATCH CO. OF AMERICA,          :
INC.,                                  :
                                       :
                    Plaintiff,         :
                                       :
            v.                         :     Before: Jane A. Restani, Chief Judge
                                       :
UNITED STATES,                         :     Court No. 04-00220
                                       :
                    Defendant.         :
———————————————————     :

## OPINION

[Plaintiff's motion  for summary judgment granted; defendant's cross-motion for summary
judgment denied.]

Dated: August 18, 2010

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (Erik D. Smithweiss,
Frances P. Hadfield, Heather C. Litman,  Robert F. Seely, Joseph M. Spraragen, and Robert B.
Silverman) for the plaintiff.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge,
International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S.
Department of Justice (Marcella Powell and Aimee Lee); Chi S. Choy, Office of the Assistant
Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of counsel,
for the defendant.

Restani, Chief Judge: This matter is before the court on cross-motions for

summary judgment by plaintiff Citizen Watch Co. of America, Inc. ("Citizen") and defendant

United States ("the Government") pursuant to USCIT Rule 56.  Citizen challenges the tariff

classification of its imported watch boxes.  U.S. Customs and Border Protection ("Customs")

classified the merchandise under subheading 4202.99.90 of the Harmonized Tariff Schedule of

the United States ("HTSUS"), which provides for jewelry boxes and similar containers.[1]  Citizen

asserts that the proper classification is under subheading 4819.50.40, HTSUS as packing

containers.[2]  For the reasons below, the court concludes that Citizen is correct and thus grants

_____

[1] The relevant portion of Chapter 42 of the HTSUS reads:

| 4202 | Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, insulated food or beverage bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber, or of paperboard, or wholly or mainly covered with such materials or with paper: |

. . . .

| | Other: |

. . . .

| 4202.99 | Other: |

. . . .

| 4202.99.90 | Other. |

The term "insulated food or beverage bags" is in the 2002 and 2003 versions of the HTSUS, but not the 2001 version.  Goods falling within subheading 4202.99.90, HTSUS are subject to a 20% duty.

[2] The relevant portion of Chapter 48 of the HTSUS reads:

| 4819 | Cartons, boxes, cases, bags and other packing containers, of paper, paperboard, cellulose wadding or webs of cellulose fibers; box files, letter trays and similar articles, of paper or paperboard of a kind used in offices, shops or the like: |

. . . .

| 4819.50 | Other packing containers,  including record sleeves: |

. . . .

| 4819.50.40 | Other. |

Goods falling within subheading 4819.50.40, HTSUS were dutiable at 1.6% in 2001, 1.1% in 2002, and 0.5% in 2003.

Citizen's motion for summary judgment and denies the Government's cross-motion for summary

judgment.

## BACKGROUND

Between 2001 and 2003, Citizen imported the merchandise at issue, four models

of boxes manufactured in China and Thailand, at the Port of Los Angeles.  Def.'s Statement

Undisputed Material Facts ("Def.'s SMF") ¶ 1; Pl.'s Objs. & Resps. Def.'s Statement

Undisputed Facts ("Pl.'s Resp. SMF") ¶ 1; Pl.'s Resp. Def.'s First Interrogs. & Req. Produc.

Docs., available at Mem. Supp. Def.'s Cross Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J.

("Def.'s Br.") Ex. J, at 4.  Each box is specially fitted to hold a single watch.  Def.'s SMF ¶ 6;

Pl.'s Resp. SMF ¶ 6.  The boxes are made of non-corrugated cardboard with a core thickness of

2 mm and an insert thickness of 1.2 mm, uncoated ribbed paper weighing 110 grams per square

meter, flocked paper weighing 60 grams per square meter, and white glue.  Pl.'s Statement

Material Facts ("Pl.'s SMF") ¶¶ 9–10; Def.'s Resp. Pl's Statement Undisputed Facts ("Def.'s

Resp. SMF") ¶¶ 9–10; Fuller Decl. ¶ 4.  They consist of a removable lid and a base.  Fuller Decl.

¶ 4.  Each box contains a bendable metal collar on which a watch can be placed.  Def.'s SMF

¶¶ 19–20; Pl.'s Resp. SMF ¶¶ 19–20; Fuller Decl. ¶ 6. The collar consists of a metal band of 0.5

mm thickness that is glued or laminated to flocked paper.  Pl.'s SMF ¶¶ 9–10; Def.'s Resp. SMF

¶¶ 9–10; Def.'s SMF ¶ 18; Pl.'s Resp. SMF ¶ 18.  The boxes are cylindrical in shape, and the

insides of the boxes are angled.  Def.'s SMF ¶¶ 21–22; Pl.'s Resp. SMF ¶¶ 21–22.  A recycling

symbol is stamped onto each box.  Pl.'s SMF ¶ 22; Def.'s Resp. SMF ¶ 22.  The undisputed

evidence indicates that each box is capable of between ten and fifty applications, or cycles of

opening the box and removing a watch and then replacing the watch and closing the box, as the

Government's counsel confirmed at oral argument.  See Singh Aff. ¶ 14, available at Corrected

Reply Mem. Further Supp. Def.'s Cross Mot. Summ. J. ("Def.'s Reply Br.") Ex. P; Singh Dep.

113:12–20, Sept. 23, 2008, available at Pl.'s Mem. Law Opp'n Def.'s Cross-Mot. Summ. J.

("Pl.'s Reply Br.") Ex. A; Pl.'s Resp. SMF ¶ 11.

Customs classified and liquidated the merchandise under heading 4202, HTSUS.

Pl.'s SMF ¶ 4; Def.'s Resp. SMF ¶ 4.  Citizen timely filed protests, which Customs denied.[3]  See

Pl.'s SMF ¶ 2; Def.'s Resp. SMF ¶ 2.  In May 2004, Citizen commenced the present action.

Both parties now move for summary judgment pursuant to USCIT Rule 56.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a).  Summary judgment is

appropriate if "there is no genuine issue as to any material fact," and "the movant is entitled to

judgment as a matter of law."  USCIT R. 56(c).  The proper construction of a tariff provision is a

question of law, and whether the imported merchandise falls within a particular tariff provision

is a question of fact.  Franklin v. United States, 289 F.3d 753, 757 (Fed. Cir. 2002).  The court

decides both questions de novo.  See 28 U.S.C. § 2640(a)(1); Metchem, Inc. v. United States,

441 F. Supp. 2d 1269, 1271 (CIT 2006).  Although Customs' classification decision "is

---

[3] The protests at issue are: (1) Protest Number 2704-02-102651, covering one entry in
October 2001; (2) Protest Number 2704-02-102743, covering twenty-five entries from October
2001 to May 2002; (3) Protest Number 2720-02-100791, covering one entry in April 2002;
(4) Protest Number 2720-03-100262, covering two entries in June and July 2002; (5) Protest
Number 2704-03-101635, covering fifteen entries from June to August 2002; (6) Protest Number
2704-03-102502, covering fifteen entries from July to November 2002; (7) Protest Number
2704-04-100100, covering one entry in November 2002 and four entries in January 2003;
(8) Protest Number 2704-04-100700, covering seven entries from January to March 2003; and
(9) Protest Number 2704-04-101025, covering eight entries from March to May 2003.  Order
(Apr. 11, 2005); Summons.

presumed to be correct," 28 U.S.C. § 2639(a)(1), this presumption attaches only to factual

determinations, <u>Universal Elecs. Inc. v. United States</u>, 112 F.3d 488, 492 (Fed. Cir. 1997).

## DISCUSSION

The General Rules of Interpretation ("GRIs") of the HTSUS direct the proper

classification of merchandise entering the United States.  <u>Orlando Food Corp. v. United States</u>,

140 F.3d 1437, 1439 (Fed. Cir. 1998).  Under GRI 1, HTSUS, "classification shall be determined

according to the terms of the headings and any relative section or chapter notes."  The terms "are

construed according to their common and commercial meanings."  <u>Len-Ron Mfg. Co. v. United</u>

<u>States</u>, 334 F.3d 1304, 1309 (Fed. Cir. 2003).  Note 2(h) to Chapter 48 of the HTSUS provides

that the chapter "does not cover . . . [a]rticles of heading 4202 (for example, travel goods)."[4]

Accordingly, the court considers whether the watch boxes are classifiable under heading 4202

before considering whether they are classifiable under heading 4819.

## I.    Heading 4202

### A.    Watch boxes may be containers similar to jewelry boxes under heading 4202.

Heading 4202, HTSUS consists of a list of exemplars, including "jewelry boxes,"

followed by the general phrase "similar containers."  Here, Customs classified the imported

watch boxes as "jewelry boxes and similar containers."  HQ 966321 (Nov. 21, 2003), <u>available</u>

<u>at</u> 2003 WL 23303771, at *1, 5.  The Government now contends that the watch boxes are

"covered by the tariff term 'similar containers' in heading 4202" under the doctrine of <u>ejusdem</u>

<u>generis</u> and argues in the alternative that the imported watch boxes are "jewelry boxes" under

---

[4] This chapter note is numbered 2(h) in the 2002 and 2003 versions of the HTSUS and
1(h) in the 2001 version of the HTSUS.

heading 4202.  Def.'s Br. 2, 6–20.  The court determines that watch boxes that fall within

heading 4202 are most precisely classified as containers similar to jewelry boxes because

watches are not necessarily jewelry.  <u>Compare</u> Chapter 71, HTSUS (covering jewelry) <u>with</u>

Chapter 91, HTSUS (covering watches); <u>see also</u> HQ 951028 (Mar. 3, 1993), <u>available at</u> 1993

WL 126634, at *3 (stating that because jewelry presentation cases are "jewelry boxes," "cases

used in the presentation and sale of other articles are 'similar containers' as that phrase appears

in" heading 4202).  This distinction, however, does not affect the requirements the watch boxes

must satisfy to be classifiable under heading 4202.

**B.      Any item classifiable under heading 4202 must be suitable for long-term or prolonged use.**

          Where, as in heading 4202, "a list of items is followed by a general word or

phrase, the rule of <u>ejusdem generis</u> is used to determine the scope of the general word or phrase."

<u>Aves. In Leather, Inc. v. United States</u>, 423 F.3d 1326, 1332 (Fed. Cir. 2005).  Under that rule,

"the general word or phrase is held to refer to things of the same kind as those specified."  <u>Sports</u>

<u>Graphics, Inc. v. United States</u>, 24 F.3d 1390, 1392 (Fed. Cir. 1994).  "In classification cases,

<u>ejusdem generis</u> requires that, for any imported merchandise to fall within the scope of the

general term or phrase, the merchandise must possess the same essential characteristics or

purposes that unite the listed exemplars preceding the general term or phrase."  <u>Aves. In Leather</u>,

423 F.3d at 1332.

          The U.S. Court of Appeals for the Federal Circuit has held that the essential

characteristics or purposes of the exemplars in heading 4202 consist of "organizing, storing,

protecting, and carrying various items."  <u>Id.</u> (internal quotation marks and citation omitted).

According to the Government, the watch boxes are "similar containers" simply because they may organize, store, protect, and carry watches. Def.'s Br. 6–12. As each watch box is designed to hold a single watch, the watch boxes can organize and store watches, at least for the short term. See Leavey Dep. 22:16–25, June 25, 2008, available at Def.'s Br. Ex. C. Citizen admits that the watch boxes can protect and carry watches. Pl.'s Resp. SMF ¶¶ 4, 7; see Def.'s SMF ¶¶ 4, 7. Citizen, however, contends that organizing, storing, protecting, and carrying are also characteristics of containers classifiable under heading 4819 and are not determinative in this case. Pl.'s Reply Br. 7–9. Citizen is correct.

Another essential, and here determinative, characteristic of the exemplars in heading 4202 is suitability for long-term or prolonged use. See Aves. In Leather, 423 F.3d at 1332–33 (affirming this Court's determination that a folio that was not sufficiently durable to hold personal items for any extended period did not have the essential characteristics of a container classifiable under heading 4202); see also Chapter 42 Note 2(A)(a), HTSUS (providing that heading 4202 does not cover "[b]ags made of sheeting of plastics . . . with handles, not designed for prolonged use"); World Customs Organization, Harmonized Commodity Description & Coding System Explanatory Notes, Explanatory Note 42.02, 792 (3d ed. 2002) ("Explanatory Note(s)") (providing that heading 4202 does not cover "[s]hopping bags . . . not designed for prolonged use").[5] As this Court has observed, the exemplars in heading 4202 "are all intended for reuse," and "[s]uitcases, briefcases, cigarette cases, musical instrument cases,

---

[5] The Explanatory Notes are not binding but "may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." N. Am. Processing Co. v.  United States, 236 F.3d 695, 698 (Fed. Cir. 2001).

and all the others listed therein are items which are used repeatedly." Jewelpak Corp. v. United

States, 97 F. Supp. 2d 1192, 1196 (CIT 2000) ("Jewelpak I").  Thus, "for the boxes at issue here

to be classified . . . in this heading, fitting with the rest of the items in the list, the boxes must be

usable on a repeated basis." Id.; see also Jewelpak Corp. v. United States, 297 F.3d 1326, 1337

(Fed. Cir. 2002) ("Jewelpak III").

        Additionally, this Court and Customs have applied the requirements of the

definition of "jewelry boxes" to watch boxes that may be containers similar to jewelry boxes.

See, e.g., Jewelpak I, 97 F. Supp. 2d at 1194 (applying the definition of "jewelry boxes" to boxes

the parties agreed were designed to hold jewelry, "including rings, bracelets, necklaces, and

watches" (emphasis added)); HQ 953398 (Sept. 15, 1993), available at 1993 WL 474190; HQ

950396 (Apr. 6, 1993), available at 1993 WL 163479. The term "jewelry boxes"

> covers not only boxes specially designed for keeping jewellery, but also similar
> lidded containers of various dimensions (with or without hinges or fasteners)
> specially shaped or fitted to contain one or more pieces of jewellery and normally
> lined with textile material, of the type in which articles of jewellery are presented
> and sold and which are suitable for long-term use.

Explanatory Note 42.02, at 791.[6]

        Here, the imported watch boxes are not boxes specially designed for keeping

jewelry because they are not designed to hold many items of jewelry.  See HQ 953398, available

at 1993 WL 474190, at *2.  Nevertheless, the imported watch boxes are lidded containers, and

---

[6] Before Explanatory Note 42.02 was amended to include jewelry presentation boxes "suitable for long-term use," Customs classified jewelry presentation boxes and similar containers used as retail or premium packaging "according to the constituent material that imparted the essential character of the containers' frames" because they were not ejusdem generis with the exemplars listed in heading 4202.  HQ 966321, available at 2003 WL 23303771, at *2.

each is specially fitted to contain one watch.  Def.'s SMF ¶ 6; Pl.'s Resp. SMF ¶ 6; Fuller Decl.

¶ 4.  Watches can be presented or sold in the boxes, as some retailers display the watches in the

boxes, although Citizen requests that retailers present its watches for sale in display cases and

not in the boxes.  Pl.'s Resp. SMF ¶ 20; Zuckerman Dep. 34:9–18, Mar. 26, 2008, available at

Def.'s Br. Ex. A.  The watch boxes, however, are lined with flocked paper, not more durable

textile material.  See Pl.'s SMF ¶¶ 9–10; Def.'s Resp. SMF ¶¶ 9–10.  In any event, because the

requirements of heading 4202 apply to such watch boxes, which may be similar to jewelry

boxes, the watch boxes must be suitable for long-term use to be classifiable under that heading.

> **C.**     **A box may be suitable for long-term use even if it does not have a durability comparable to that of the articles for which it is intended.**

Explanatory Note 42.02 does not define "suitable for long-term use."  This Court

addressed the meaning of the phrase in Jewelpak Corp. v. United States, 131 F. Supp. 2d 100

(CIT 2001) ("Jewelpak II").  The court concluded in Jewelpak II that the jewelry presentation

boxes at issue in the case were suitable for long-term use and classifiable under heading 4202,

HTSUS based on "[t]he physical construction of the merchandise, the ability of the merchandise

to protect as well as store jewelry, the design and marketing of the merchandise, the expectation

of both jewelry retailers and the ultimate purchaser that these boxes will survive repeated

handling," and other facts revealed at trial.  Id. at 104.  The Federal Circuit affirmed.  Jewelpak

III, 297 F.3d at 1337.

Citizen contends that items are "suitable for long-term use" only if they are

"designed to have a durability comparable to that of the articles for which they are intended" by

analogy to the Explanatory Note to GRI 5(a) and under the commercial meaning of the phrase.

Mem. Law Supp. Pl.'s Mot. Summ. J. ("Pl.'s Br.") 12–15.  The witnesses for both parties agree

that the imported watch boxes do not have such durability.  See Fuller Decl. ¶ 8; Zuckerman

Decl. ¶ 5; Singh Dep. 127:22–25; Hamill Dep. 51:15–24, Apr. 17, 2008, available at Smithweiss

Decl. Ex. D.  Citizen's legal contention, however, lacks merit.

      GRI 5(a), HTSUS states:

> Camera cases, musical instrument cases, gun cases, drawing instrument cases,
> necklace cases and similar containers, specially shaped or fitted to contain a
> specific article or set of articles, suitable for long-term use and entered with the
> articles for which they are intended, shall be classified with such articles when of
> a kind normally sold therewith.[7]

This provision is not applicable here because the boxes are not entered with the watches.  The

Explanatory Note to GRI 5(a) states that containers "are suitable for long-term use" if "they are

designed to have a durability comparable to that of the articles for which they are intended."

Explanatory Note GRI 5(a)(I)(2), at 7.

      GRI 5(a) and its accompanying notes do not compel the conclusion that

containers under heading 4202 must be designed to have a durability comparable to that of the

articles for which they are intended.  Because Explanatory Notes are not statutes and are not

binding, the principles of statutory construction that identical phrases within the same statute

should normally be given the same meaning, see Powerex Corp. v. Reliant Energy Servs., Inc.,

551 U.S. 224, 232 (2007), and that statutes addressing the same subject matter generally should

be read in pari materia as if they were one law, see Wachovia Bank v. Schmidt, 546 U.S. 303,

315–16 (2006), do not apply.  Indeed, as the Government suggests, the fact that the drafters of

---

[7] GRI 5(a) also applies to jewelry boxes presented with the articles for which they are
intended.  Explanatory Note GRI 5(a)(II)(1), at 7.

the Explanatory Notes further defined the term "suitable for long-term use" in the Explanatory

Note to GRI 5(a) but not in Explanatory Note 42.02 may signify that the drafters intended a

different interpretation.[8]  See Def.'s Br. 18.  The only link between the two Explanatory Notes is

found in a commentary to an amendment to Explanatory Note 42.02, which states that the

drafters "had regard . . . to the Explanatory Note to [GRI] 5(a), which indicates that jewellery

boxes and cases are a type of container which is specially shaped or fitted to contain jewellery

and which is suitable for long-term use."  Customs Co-operation Council, Amendment to the

Explanatory Notes Concerning the Definition of Jewellery Boxes 2 (July 5, 1989), available at

Smithweiss Decl. Ex. B.  This statement does not mention that containers under the Explanatory

Note to GRI 5(a) must be designed to have a durability comparable to that of the articles for

which they are intended, and it does not bind the court.  See Airflow Tech., Inc. v. United States,

524 F.3d 1287, 1293 (Fed. Cir. 2008).

           Citizen also cites the expert witnesses' testimony and a glossary of packaging

terms published by The Packaging Institute, U.S.A. and Packaging Machinery Manufacturers

Institute for the proposition that in the packaging industry, "suitable for long-term use" means

that a container will last as long as the item it is designed to contain.  See Pl.'s Br. 14–15.  This

evidence of the commercial meaning of the term is problematic.  The testimony of Citizen's

expert witness, Peter Fuller, that a container must be designed to have a durability comparable to

---

[8] The court, however, does not find helpful the testimony of a Customs official that the
meaning of "suitable for long-term use" in Explanatory Note 42.02 is different from similar
words in the Explanatory Note to GRI 5(a) "because of the context [of] the phrase, and when
taken as a whole the explanatory note in 42.02 refers to a term which is to mean not only the
traditional jewelry box, but the presentation box as well."  Hamill Dep. 56:7–23, Apr. 17, 2008,
available at Def.'s Br. Ex. N.

that of the articles it contains contradicts his testimony in <u>Jewelpak</u> that a jewelry box can be

suitable for long-term use but need not last as long as the piece of jewelry it contains.  <u>See</u> Fuller

Decl. ¶ 8; Fuller Dep. 63:19–22, Mar. 30, 1999, <u>available at</u> Def.'s Br. Ex. H.  The testimony of

the Government's expert witness, Dr. Sher Paul Singh, and the glossary of packaging terms

appear to refer to shipping containers, not containers similar to jewelry boxes.  <u>See</u> American

National Standard, Glossary of Packaging Terms: Standard Definitions of Trade Terms

Commonly Used in Packaging 47 (5th ed. 1979), <u>available at</u> Smithweiss Decl. Ex. E; Singh

Dep. 127:8–128:22, 161:3–10.

      Apparently, the court in the <u>Jewelpak</u> cases was not asked to determine whether

the jewelry boxes were designed to have a durability comparable to that of the jewelry for which

they were intended when it decided whether the boxes were suitable for long-term use.  In ruling

letter HQ 951028, Customs determined that jewelry boxes need not be designed to have a

durability comparable to that of articles for which they are intended to be suitable for long-term

use under heading 4202.  HQ 951028, <u>available at</u> 1993 WL 126634, at *4–5.  Rather, jewelry

boxes are suitable for long-term use under heading 4202 if they are "sufficiently well constructed

to provide durability adequate" to store and protect an item for many years after sale.  <u>Id.</u> at

*4–5.  This ruling letter is entitled to deference relative to its "'power to persuade.'"  <u>United

States v. Mead Corp.</u>, 533 U.S. 218, 235 (2001) (quoting <u>Skidmore v. Swift & Co.</u>, 323 U.S.

134, 140 (1944)).

      The court finds the ruling letter's conclusion persuasive.  It is consistent with the

<u>Jewelpak II</u> factors and the essential characteristic of suitability for long-term repeated use that

the exemplars of heading 4202 share.  As Customs noted in HQ 951028, the notion that

presentation boxes for jewelry and similar articles, made of leather, composition leather,

sheeting of plastics, textile materials, vulcanized fiber, or paperboard, must have a durability

comparable to those articles, which may have a life expectancy of decades or centuries, is

untenable.  See HQ 951028, available at 1993 WL 126634, at *4–5.  Even a hard plastic hinged

ring presentation box covered with textile material will not last as long as the diamond ring it

contains, but it may last for many years.

> **D.      The undisputed evidence demonstrates that Citizen's watch boxes are not
> suitable for long-term use.**

Thus, the imported watch boxes are suitable for long term use if they are

"sufficiently well constructed to provide durability adequate" to store and protect an item for

many years after sale.  Id. at *4–5.  In making this determination, the court looks to: (1) "[t]he

physical construction of the merchandise," (2) "the ability of the merchandise to protect as well

as store" watches, (3) "the design and marketing of the merchandise," and (4) "the expectation of

both jewelry retailers and the ultimate purchaser that these boxes will survive repeated

handling."  Jewelpak II, 131 F. Supp. 2d at 104.  The undisputed evidence related to each of

these factors indicates that the imported watch boxes are not suitable for long-term use.

> *1.      The physical construction of the merchandise*

The witnesses for both parties agree that boxes constructed with paper on the

outside generally are not intended for long-term use.  See Singh Dep. 57:2–5; Leavey Dep.

20:20–24; 22:3–5; Fuller Decl. ¶ 9.  Charles Leavey, a jewelry retailer, testified that the imported

watch boxes are not suitable for long-term use because of their paper covering, quality, and odd

sizes.  Leavey Dep. 22:6–11.  Citizen's expert, Fuller, also concluded that the imported watch

boxes are not suitable for long-term use based on their physical construction and materials.

Fuller Decl. ¶¶ 5, 12.  According to Fuller, boxes that are suitable for long-term use generally

have metal, hard plastic, or wood frames, unlike the cardboard frames here, and lids with hinges

made of heavy gauge steel to withstand repeated openings and closings, unlike the removable

lids here.  Fuller Decl. ¶ 9, Ex. A, at 3.  Fuller also testified that the imported watch boxes' paper

covering lacks a protective coating necessary to prevent staining and wear from repeated use.  Id.

¶ 5, Ex. A, at 2–3.  The Government's expert, Singh, agreed that a protective coating would be

more appropriate and would help prevent staining and wear from repeated use.  Singh Dep.

112:5–18, Sept. 23, 2008, available at Def.'s Br. Ex. D.

        Singh did not conclude that the imported watch boxes are suitable for long-term

use.  He merely stated that the construction and materials of the imported watch boxes are "very

similar to structures and materials used by manufacturers of jewelry boxes," and the watch boxes

are multi-component structures consisting of several layers of glued cardboard and paper that

have a high level of strength.  Singh Expert Witness Report ("Singh Report") 3–5, available at

Def.'s Reply Br. Ex. P, Ex. A.[9]  The statements, however, do not create a genuine issue of

_____

        [9] Citizen argues that Singh's report is inadmissible for consideration on summary
judgment under USCIT Rule 56(e) because it is unsworn and that certain paragraphs of the
Defendant's Response to Plaintiff's Statement of Undisputed Facts are deemed admitted because
they rely on the inadmissible report.  Pl.'s Reply Br. 2–5.  An unsworn statement submitted in
support of a summary judgment motion does not meet the requirements of Federal Rule of Civil
Procedure 56(e).  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n.17 (1970).  USCIT Rule
56(e) is identical to Federal Rule of Civil Procedure 56(e) in all relevant respects.  Nevertheless,
several courts have concluded that the deficiency of an unsworn expert report may be cured for
consideration on summary judgment by a later affidavit or deposition reaffirming the report.  See
DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach, 576 F.3d 820, 826 (8th Cir. 2009)
(citing cases).  Here, Singh reaffirmed the opinions contained in his unsworn expert report in an
April 2010 affidavit.  Singh Aff. ¶¶ 11–12.  Accordingly, the unworn report is acceptable for
(continued...)

material fact because Singh's testimony indicates that the watch boxes are only suitable for

limited reuse and are capable of ten to fifty cycles of openings and closings.  See Singh Dep.

113:12–20, available at Pl.'s Reply Br. Ex. A.  Because the watch boxes are only capable of as

little as ten and no more than fifty cycles of openings and closings, they would last less than two

months if used on a daily basis and less than a year if used on a weekly basis.  Boxes like the

imported watch boxes that are only capable of ten to fifty openings and closings are not

sufficiently well constructed to provide a durability adequate to last for many years and therefore

are not suitable for long-term use.  See Jewelpak II, 131 F. Supp. 2d at 102, 104 (finding that

jewelry boxes with hinges composed of high grade steel, as opposed to a cheaper alternative that

would sustain no more than fifty box openings, were suitable for long-term use).

> 2.       *The ability of the merchandise to protect as well as store watches*

Similarly, because imported the watch boxes are capable only of ten to fifty

cycles of openings and closings, they are not sufficiently well constructed to provide a durability

adequate for protective storage of a watch for many years.  The undisputed evidence

demonstrates that the boxes can protect and store the watches for a short period of time.  See

Def.'s SMF ¶ 4; Pl.'s Resp. SMF ¶ 4; Leavey Dep. 18:20–25, 22:16–25.  As discussed supra,

watch boxes classifiable under heading 4202 must be suitable for protective storage for years,

not merely days, weeks, or months.

---

[9](...continued)
summary judgment purposes.  The court finds no prejudice to Citizen in considering the report,
as Citizen had an opportunity to address Singh's opinions during his September 2008 deposition,
and Citizen responded to Singh's opinions in its summary judgment papers.

     3.     *The design and marketing of the merchandise*

     Although the evidence indicates that the cylindrical shape, the inclined interior, and the "velvety" feel of the flocked paper of the boxes enhance the display and marketing of Citizen's watches, and a cylindrical box is more expensive to ship and store than a rectangular box, Citizen has shown that the watch boxes were primarily designed to be recyclable to enhance the marketing of Citizen's watches as eco-friendly. See Def.'s SMF ¶ 25; Pl.'s Resp. SMF ¶ 25; Singh Aff. ¶¶ 16, 21–23; Singh Report 4–5; Zuckerman Decl. ¶ 5. Although the Government denies this, it has presented no evidence to the contrary. Def.'s Resp. SMF ¶ 21; see Pl.'s SMF ¶ 21. Rather, its expert testified that the boxes are fully recyclable and ultimately intended to be recycled. Singh Dep. 113:12–21, available at Pl.'s Reply Br. Ex. A. Fuller testified that in his experience, "recyclability is never a factor when designing a box intended for long-term use," Fuller Decl. ¶ 7, and Singh agreed that it is difficult for a recyclable box to be truly durable, Singh Dep. 156:20–22, available at Pl.'s Reply Br. Ex. A. Although Customs has stated that actual use after purchase is irrelevant, HQ 966321, available at 2003 WL 23303771, at *3, items like the imported watch boxes that are primarily designed to be disposed through recycling after purchase and not to be reused long-term are not classifiable under heading 4202, see NY I81233 (May 7, 2002), available at 2002 WL 1602858 (classifying a jewelry gift box made of rigid but thin paperboard under heading 4819 rather than heading 4202 because it "is a type of disposable container typically included with a consumer's jewelry purchase. . . . and is not well suited for long-term use").

     4.     *The expectation of jewelry retailers and ultimate purchasers that the*

*boxes will survive repeated handling*

The only evidence of the expectation of jewelry retailers regarding the imported watch boxes' ability to survive repeated handling is Leavey's testimony that Citizen's watch boxes have the same durability as the shiny-coated square paper boxes with cotton inside that contain lower-end, less expensive merchandise and merely serve as packaging for a consumer to bring a watch home.  Leavey Dep. 17:1–18:6, 18:12–15.  Although the parties dispute the durability of the flocked paper and the ability of the boxes to withstand high humidity, the undisputed evidence, including the testimony of the Government's expert, indicates that the watch boxes will suffer wear and tear through ordinary handling and are only suitable for limited reuse of ten to fifty cycles of openings and closings.[10]  Def.'s SMF ¶¶ 12, 15; Pl.'s Resp. SMF ¶¶ 10–12, 15; Singh Dep. 113:12–20, 156:15–17, underline available at Pl.'s Reply Br. Ex. A; Fuller Decl. ¶ 5.  As discussed supra, an item that can withstand only such limited repeated handling is not suitable for long-term use and is not classifiable under heading 4202.  See Jewelpak II, 131 F. Supp. 2d at 102–04 (finding that jewelry presentation boxes that were capable of more than fifty openings and could be handled thousands of times or indefinitely were suitable for long-term use).

## II.    Heading 4819

Heading 4819, HTSUS provides for "packing containers, of paper[ or] paperboard."  It "covers containers of various kinds and sizes generally used for the packing,

---

[10] Additionally, the Government agrees that the paper covering the boxes is susceptible to water damage and has not presented any evidence to counter Citizen's evidence that the edges of the paper covering of the boxes can lift and buckle with repeated handling, the boxes can be stained or dented, and the frames of the boxes may warp due to heat.  See Pl.'s SMF ¶¶ 12–15; Def.'s Resp. SMF ¶¶ 12–15; Fuller Decl. ¶ 5.

transport, storage or sale of merchandise, whether or not also having a decorative value."

Explanatory Note 48.19(A), at 893.  The undisputed evidence indicates that the imported watch

boxes may be used for the packing, transport, storage, and sale of watches.  See Leavey Dep.

19:2–22, 22:16–25; Singh Report 4–6.  The Government has offered no evidence to support its

denial of Citizen's assertion that the boxes can facilitate transportation and serve as fancy

packaging.  See Pl.'s SMF ¶ 19; Def.'s Resp. SMF ¶ 19.  Rather, the Government's evidence

demonstrates that the boxes are a somewhat inefficient form of packaging.  Def.'s Resp. SMF

¶ 19.  The parties agree that the boxes are of the kind that retailers generally provide to

consumers to transport and carry their recently purchased watches out of the store.  Pl.'s SMF

¶ 18; Def.'s Resp. SMF ¶ 18; Def.'s SMF ¶ 7; Pl.'s Resp. SMF ¶ 7.  Accordingly, the boxes are

classifiable under heading 4819.[11]  Subheading 4819.50.40, HTSUS, which provides for "Other

packing containers,  including record sleeves: Other," accurately describes the imported watch

boxes.

---

[11] According to two European Community Binding Tariff Information ("BTI") rulings,
the British customs authority has classified Citizen's watch boxes under heading 4819,
apparently because the boxes are uncoated and intended to be recycled.  BTI GB 115445294
(May 17, 2006), available at Smithweiss Decl. Ex. F; BTI GB 115445196 (May 17, 2006),
available at Smithweiss Decl. Ex. F.  Although the court is not bound by those decisions, they
may "be entitled to 'respectful consideration,'" as promoting uniformity and predictability in
international commerce is important.   Wilton Indus., Inc. v. United States, 493 F. Supp. 2d
1294, 1317 n.32 (CIT 2007).

## CONCLUSION

The proper classification of the imported merchandise, therefore, is under subheading 4819.50.40, HTSUS.  The plaintiff's motion for summary judgment is GRANTED, and the defendant's cross-motion for summary judgment is DENIED.

                                             /s/ Jane A. Restani
                                            Jane A. Restani
                                            Chief Judge

Dated: This 18th day of August, 2010.
New York, New York.

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ———————————————— | : |
| CITIZEN WATCH CO. OF AMERICA, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     Before: Jane A. Restani, Chief Judge |
| | : |
| UNITED STATES, | :     Court No. 04-00220 |
| | : |
| Defendant. | : |
| ————————————————: | |

## <u>JUDGMENT</u>

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that the plaintiff's merchandise is correctly classifiable under subheading 4819.50.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"); and it is further hereby

ORDERED that plaintiff Citizen Watch Co. of America, Inc.'s motion for summary judgment is granted and that the defendant United States' cross-motion for summary judgment is denied; and it is further hereby

ORDERED that Customs and Border Protection, United States Department of Homeland Security, reliquidate the entries which are the subject of this case under the aforesaid

Court No. 04-00220                                                                Page 2

HTSUS subheading and refund to the plaintiff any excess duties paid, together with interest

thereon as provided by law.


                                                      ___/s/ Jane A. Restani_____
                                                         Jane A. Restani
                                                         Chief Judge

Dated: This 18th day of August, 2010.
New York, New York.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____       By: _____
                                            Deputy Clerk